UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DING DING,<br><br>        Plaintiff,<br><br>    v.<br><br>STRUCTURE THERAPEUTICS, INC., et al.,<br><br>        Defendants. | Case No. 24-cv-01368-JSC<br><br>**ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>Re: Dkt. Nos. 24, 62 |

Dr. Ding Ding alleges Defendants created a hostile work environment and terminated her employment because of her sex and status as a victim of domestic violence. (Dkt. No. 60.)[1] The Court previously denied Defendants' motion to compel arbitration on the grounds the complaint is covered by the Ending Forced Arbitration of Sexual Assault and Harassment Act (EFAA) because Dr. Ding pleads a plausible sexual harassment claim under California law. (Dkt. No. 56.) But, the Court deferred final ruling to give Dr. Ding the opportunity to amend her New York state law claims so the Court could determine whether those claims, too, are covered by the EFAA. (Dkt. No. 56 at 21-22.) Dr. Ding did so and Defendants again moved to compel arbitration arguing the New York claims are not covered by the EFAA. (Dkt. No. 62.) Having carefully considered the arguments and briefing, the Court concludes oral argument is not required on the amended complaint, *see* N.D. Cal. Civ. L.R. 7-1(b), and DENIES Defendants' motion to compel arbitration for the reasons stated in its October 29, 2024 Order (Dkt. No. 56), and because Dr. Ding plausibly pleads New York law sexual harassment claims covered by the EFAA.

//

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

## ANALYSIS

The EFAA provides:

> Notwithstanding any other provision of this title, at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute.

9 U.S.C. § 402(a). A "'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). The EFAA "makes pre-dispute arbitration agreements unenforceable'" upon the plaintiff's election. *Johnson v. Everyrealm, Inc.* 657 F. Supp. 3d 535, 561 (S.D.N.Y. 2023). The Court must first determine whether the plaintiff "'alleges conduct constituting a sexual harassment dispute,' so as to come within the EFAA" and then decides whether "the EFAA makes the arbitration agreement unenforceable as to the entirety of the [complaint]'s claims." *Id.* at 550-51.

The Court previously held: (1) Dr. Ding plausibly alleged a sexual harassment claim under California's Fair Employment and Housing Act ("FEHA"), (2) Dr. Ding properly elected to invalidate the arbitration clause by filing her federal suit, and (3) the EFAA made the arbitration agreement unenforceable as to the entirety of the complaint's claims. (Dkt. No. 56.) Pending before the Court is solely the question of whether Dr. Ding's amended complaint now also plausibly alleges sexual harassment claims under the New York City Human Rights Law ("NYCHRL") and the New York State Human Rights Law ("NYSHRL").[2]

### A. NYCHRL Claim

Of the two New York laws, the NYCHRL has the "most lenient applicable liability standard." *Johnson*, 657 F. Supp. 3d at 552. Under the NYCHRL, "there are not separate standards for 'discrimination' and 'harassment' claims; rather, 'there is only the provision of the

---

[2] Courts agree "state law" under the EFAA includes local laws such as the NYCHRL because "where Congress has defined 'state' elsewhere, it has done so broadly as including states' subdivisions." *Johnson*, 657 F. Supp. 3d at 552 n.14 (citing federal statutes and collecting cases); *see also Delo v. Paul Taylor Dance Found., Inc.*, 685 F. Supp. 3d 173, 182 n.2 (S.D.N.Y. 2023) ("The Court again agrees with *Johnson*'s analysis, and similarly reads 'State law' in § 401(4) to include the NYCHRL.").

2

1  law that proscribes imposing different terms, conditions and privileges of employment based, inter
2  alia, on gender.'" *Clarke v. InterContinental Hotels Grp., PLC*, No. 12-cv-2671 (JPO), 2013 WL
3  2358596, at *11 (S.D.N.Y. May 30, 2013) (quoting *Sotomayor v. City of New York*, 862 F. Supp.
4  2d 226, 261 (E.D.N.Y. 2012) (citing N.Y.C. Admin. Code § 8-107[1][a])). To state an NYCHRL
5  hostile work environment sexual harassment claim a plaintiff must plead only "unwanted gender-
6  based conduct." *Delo*, 685 F. Supp. 3d at 182 (cleaned up).  And under the NYCHRL, a plaintiff
7  need not plead conduct was "severe or pervasive" to state a claim.  *See Golston-Green v. City of*
8  *New York*, 123 N.Y.S.3d 656, 670 (N.Y. App. Div. 2020); *see also Mihalik v. Credit Agricole*
9  *Chevrequx N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) ("Under this standard, the conduct's
10 severity and pervasiveness are relevant only to the issue of damages.") (citing *Williams v. New*
11 *York City Housing Authority*, 872 N.Y.S.2d 27, 38 (N.Y. App. Div. 2009)).  "A single comment
12 'being made in circumstances where that comment would, for example, signal views about women
13 in the workplace' may be actionable under the City Human Rights Law." *Id.* (quoting *Williams*,
14 872 N.Y.S.2d at 41 n.30; citing *Hernandez v. Kaisman*, 103 A.D.3d 106, 115 (N.Y. App. Div.
15 2012)).

16 Dr. Ding plausibly states an NYCHRL claim for hostile work environment sexual
17 harassment.  Defendant Stevens expressed a preference to hire a man for the CFO position, though
18 the Board, "to emphasize 'gender diversity' in its recruitment efforts," did not.  (Dkt. No. 60 ¶¶
19 17, 18.)  From the time she began working for Defendant Structure Therapeutics (the
20 "Company"), Defendants "almost immediately began to sideline Dr. Ding and not allow her to
21 perform the primary functions of her position."  (*Id.*  ¶ 34.)  Defendant Stevens "diminished Dr.
22 Ding's roles on various projects and instead directed her to read and listen for her first year with
23 the company."  (*Id.*)  Defendant Stevens reiterated comments to Dr. Ding that she "was 'too
24 aggressive'" and that investment bankers felt "lectured" by her. "If Dr. Ding was a man, these
25 'Wolves of Wall Street' never would have opined that she was being 'too aggressive' or that she
26 had been 'lecturing them.' Rather than recognizing these sexist comments, Defendant Stevens
27 adopted and ratified their behavior, and later would use such sexist opinions to form a pretextual
28 basis for terminating Dr. Ding." (*Id.* ¶ 36.)  When Dr. Ding later informed Defendants of physical

3

1  injuries suffered from a domestic violence incident, Defendant Stevens remarked "I can hardly see
2  anything. You may be more sensitive to it than others." (*Id.* ¶ 48.) Days later, Defendant Stevens
3  pressured Dr. Ding not to attend executive meetings, asked her repeatedly to reconsider her role as
4  CFO in light of her domestic violence incident, and recommended her termination to the Board.
5  (*Id.* ¶¶ 49-53.)

        Drawing all reasonable inferences in Dr. Ding's favor, Defendants subjected her to "'unwanted gender-based conduct'" and as such "'she has been treated less well than other employees because of her gender.'" *Mitura v. Finco Servs., Inc.*, 712 F. Supp. 3d 442, 452-53 (S.D.N.Y. 2024) (quoting *McHenry v. Fox News Network, LLC*, 510 F. Supp. 3d 51, 68 (S.D.N.Y. 2020); citing *Mihalik*, 715 F.3d at 110). Defendant Stevens's noted preference for a male CFO, reiteration of sexist comments about her "aggressive[ness]," and belittling Dr. Ding's domestic violence experience, support an inference the conduct was based on Dr. Ding's gender and created a hostile work environment. Further, Defendants' assumptions about Dr. Ding's ability to do her job both at the outset and after having suffered from domestic violence support an inference of unwanted gender-based conduct. While Defendants argue this conduct is "gender neutral" (Dkt. No. 62 at 14), drawing all reasonable inferences in Dr. Ding's favor, the Court cannot conclude at this early stage that these actions do not support an inference of gender-based animus creating a hostile work environment. And though certain comments in a vacuum may appear gender-neutral, the Court considers the conduct as a whole, not piecemeal. *See Delo*, 685 F. Supp. 3d at 184 (taking all allegations together to determine if the plaintiff established sexual harassment under the NYCHRL and NYSHRL). Thus, accepting all well-pleaded allegations as true, Dr. Ding plausibly states an NYCHRL sexual harassment claim.

        Defendants protest that "'gender discrimination' and 'sexual harassment' are not coextensive under the statute." *Singh v. Meetup LLC* (*Singh I*), 23-cv-9502 (JPO), --- F. Supp. 3d ---, 2024 WL 3904799, at *4 (S.D.N.Y. Aug. 22, 2024) (citing N.Y.C. Admin. Code §§ 8-107(29)(b)). In *Singh I*, the court determined that because the EFAA only applies to "sexual harassment dispute[s]" and the NYCHRL does not distinguish between gender discrimination and sexual harassment, the court would have to distinguish between the two to decide whether the

4

EFAA is triggered. *Id.* at *4. The court then reviewed NYCHRL sexual harassment cases and found "successful plaintiffs have alleged conduct or language of the same kind of romantic, sexual, or lewd nature that the [New York City Commission on Human Rights] has described in its guidance materials." *Id.* (collecting cases).³ And because the plaintiff there did not plead romantic, sexual, or lewd conduct, the court held she did not properly plead a sexual harassment claim under the NYCHRL, the EFAA was not triggered, and thus the court compelled arbitration. *Id.* at *6-7. The court held it could not "collapse the difference between 'gender discrimination' and 'sexual harassment,' … absent contrary guidance from the state courts." *Id.* at *7.

The Court is not persuaded by *Singh I*. The EFAA unambiguously states: "[t]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). In construing sexual harassment under the NYCHRL, New York state courts have held:

> Despite the popular notion that "sex discrimination" and "sexual harassment" are two distinct things, it is of course, the case that the latter is one species of sex- or gender-based discrimination. There is no "sexual harassment provision" of the law to interpret; there is only the provision of the law that proscribes imposing different terms, conditions and privileges of employment based, inter alia, on gender.

*Williams*, 872 N.Y.S. 2d at 37 (citing N.Y.C. Admin. Code § 8-107[1][a]). So, under the NYCHRL, "the primary issue for a trier of fact in harassment cases, as in other terms-and-conditions cases, is whether the plaintiff has proven by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Id.* at 39. Thus, "a focus on unequal treatment based on gender … is in fact the approach that is most faithful to the uniquely broad and remedial purposes of the local statute." *Id.* at 40. Under the EFAA "'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable . . . State law." 9 U.S.C. § 401(4). The NYCHRL, as interpreted by New York courts, says sexual harassment is conduct involving treating the plaintiff less well than other employees based on her gender. The EFAA requires the Court adopt that definition.

---

³ By statute, the New York Commission on Human Rights is required to "post conspicuously on the commission's website online resources about sexual harassment[.]" N.Y.C. Admin. Code § 8-132[a].

5

Further, in *Singh I*, the court cites the New York City Commission on Human Rights' website online training module and guidance for victims which states "[s]exual harassment is unwelcome verbal or physical behavior based on a person's gender … ." *Stop Sexual Harassment Act*, NYC Human Rights, https://www.nyc.gov/site/cchr/law/sexual-harassment-training-main.page [https://perma.cc/BT9E-UXXK] (last visited Feb. 5, 2025). The Commission is further tasked with creating a poster displaying "[a]n explanation of sexual harassment" to be displayed by employers. N.Y.C. Admin. Code § 8-107[29][b][1]. In the poster, the Commission defines sexual harassment as "a form of gender-based discrimination, [which] is unwelcome verbal or physical behavior based on a person's gender." *Stop Sexual Harassment Act* Notice, NYC Human Rights, https://www.nyc.gov/assets/cchr/downloads/pdf/materials/SexHarass_Notice8.5x14-English.pdf [https://perma.cc/PQ3V-FRS6] (last visited Feb. 5, 2025). In the poster's examples of sexual harassment, the Commission includes "making sexist remarks or derogatory comments based on gender" as well as "making lewd or sexual comments about an individual's appearance, body, or style of dress." *Id.* That the Commission described both lewd or sexual remarks *and* sexist or derogatory comments based on gender is consistent with the state courts' interpretation of "sexual harassment" as broader than just lewd, sexual, or romantic harassment. In both the poster and the website, the Commission does not define sexual harassment as the *Singh I* court does; instead, it defines it as "unwelcome verbal or physical behavior based on a person's gender." So, the Court will not stray from the definition of sexual harassment under the NYCHRL as stated by New York state and federal courts, as well as the New York Human Rights Commission.

For these reasons, the Court concludes Dr. Ding plausibly pled her NYCHRL claim for sexual harassment.

### B. NYSHRL Claim[4]

The NYSHRL "expressly proscribes harassment on the basis of sex." *Diaz-Roa v. Hermes*

---

[4] A subsection of the NYSHRL not relevant to this case was held unconstitutional by a New York court. *People by James v. Commons West, LLC*, --- N.Y.S.3d ---, 2024 WL 5083546, at *1 (N.Y. App. Div., Dec. 11, 2024) (holding subdivision (5)(a)(1) unconstitutional under the New York state constitution "to the extent that it makes it an unlawful discriminatory practice to refuse to rent or lease housing accommodations to any person, or group of persons, because their source of income includes Section 8 vouchers.").

*Law, P.C.*, 24-cv-2105 (LJL), --- F. Supp. 3d ---, 2024 WL 4866450, at *22 (S.D.N.Y. Nov. 21, 2024) (appeal filed) (citing 2019 Sess. Laws Ch. 160 (A. 8421) (McKinney)). Before the NYSHRL was amended in 2019, "claims brought under New York State's Human Rights Law [were] analytically identical to claims brought under Title VII." *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 107 n.10 (2d Cir. 2011) (quoting *Torres v. Pisano*, 116 F.3d 625, 629 n.1 (2d Cir. 1997)). Thus, a plaintiff can claim sexual harassment under the NYSHRL on a theory of "hostile work environment." *Diaz-Roa*, 2024 WL 4866450, at *22. Under the amended NYSHRL, a plaintiff is not required to plead harassing conduct is "severe or pervasive"; instead, "a plaintiff need only show that she was subjected 'to inferior terms, conditions or privileges of employment because of [her] membership in one or more of [the] protected categories.'" *Delo*, 685 F. Supp. 3d at 182 (quoting N.Y. Exec. Law § 296(1)(h)); *see also Mitura*, 712 F. Supp. 3d at 453 ("[T]he federal 'severe or pervasive' standard of liability does not apply to NYCHRL or the post-amendment NYSHRL claims."). To state a claim for sexual harassment under a theory of hostile work environment, Dr. Ding "need only show that she was subjected to 'inferior terms, conditions or privileges of employment because of the individual's membership in one or more of the[] protected categories." *Mitura*, 712 F. Supp. 3d at 453 (quoting *Mayorga v. Greenberg*, No. 22-cv-387, 2023 WL 6307994, at *8 (E.D.N.Y. Sept. 28, 2023)). So, for the reasons explained above, Dr. Ding plausibly pleads sexual harassment under the NYSHRL.

Defendants similarly argue as they did with the NYCHRL, that under the NYSHRL sexual harassment is different from sex discrimination. (Dkt. No. 62 at 11 n.7.) In *Singh II*, the court, on reconsideration of its prior order compelling arbitration, concluded that while "[t]he NYSHRL does not distinguish sexual harassment from sex-based or gender-based harassment" the court would still distinguish between the two. *Singh v. Meetup LLC* (*Singh II*), 23-cv-9502 (JPO), 2024 WL 4635482, at *2 (S.D.N.Y. Oct. 31, 2024). The court then emphasized that other NYSHRL sexual harassment cases in the EFAA context "all involve clearly sexual and lewd behavior." *Id.* (citing *Mitura*, 712 F. Supp. 3d at 450; *Delo*, 685 F. Supp. 3d at 178; *Johnson*, 657 F. Supp. 3d at 543-44). Finally, the court looked to guidance from the New York State Division of Human Rights (the division created to enforce the NYSHRL) which states sexual harassment is prohibited

as "a form of sex discrimination under the New York State Human Rights Law." *Id.* at *3 (quoting *Sexual Harassment*, N.Y. State Div. of Hum. Rts.). Thus, the court held, "sex discrimination cannot be a subset of sexual harassment, nor can the two be coextensive." *Id.*

The Court does not agree. First, the EFAA does not require courts to impose a distinction between sexual harassment that is lewd, romantic, or sexual and that which is not when the state law itself does not do so. Again, the EFAA states "[t]he term 'sexual harassment dispute' means a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Here, New York has defined sexual harassment under its own law—the NYSHRL—to mean a person was subjected "to inferior terms, conditions or privileges of employment because of [sex]." N.Y. Exec. Law § 296(1)(h). Further, the New York State Division of Human Rights, in the brochure cited in *Singh II*, states regarding sexual harassment, "[h]arassment is against the law whenever an individual is subjected to inferior terms, conditions or privileges of employment." *Sexual Harassment*, N.Y. State Div. of Hum. Rts., https://dhr.ny.gov/system/files/documents/2024/04/nysdhr-sexual-harassment-brochure_0.pdf (last visited Feb. 5, 2025). The Division goes on to explain sexual harassment "can consist of unwanted verbal or physical sexual advances, sexually explicit statements, *or discriminatory remarks that are offensive or objectionable to the recipient*." *Id.* (emphasis added). The EFAA provides that state law controls the meaning of "sexual harassment dispute." So, the Court must follow New York law.

Dr. Ding has therefore plausibly pled her NYSHRL sexual harassment claim.

## CONCLUSION

The Court concludes Dr. Ding properly pleads New York sexual harassment claims under the NYCHRL and NYSHRL. Because the Court concludes these claims and the FEHA sexual harassment claim all trigger the EFAA, Dr. Ding properly and timely elected to pursue litigation in this forum, and the remaining claims all relate to the sexual harassment dispute, the Court DENIES Defendants' motion to compel arbitration. (*See* Dkt. No. 56.)

The Court sets a case management conference for March 26, 2025 at 2:00 p.m. A joint case management conference statement is due one week in advance.

This Order disposes of Docket Nos. 24 and 62.

**IT IS SO ORDERED.**

Dated: February 5, 2025

JACQUELINE SCOTT CORLEY
United States District Judge